IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TERRY LEE DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.  2:05-cv-1783-JHH-TMP |
| ) | |
| AULII WILEY, KENNETH L. JONES, ) | |
| PRISON HEALTH SERVICES, INC., ) | |
| ) | |
| Defendants ) | |

MEMORANDUM OPINION

In a series of orders entered on August 31, 2009, the court dismissed all of plaintiff's claims except any claims he asserts against defendants Kenneth L. Jones and Aulii Wiley, in their personal capacity, and against Prison Health Services, Inc. ("PHS") under Alabama state law.  In one of those orders, the court directed the parties to show cause why the court should not decline to exercise supplemental jurisdiction over the state-law claims, inasmuch as all federal claims have been dismissed.  28 U.S.C. § 1367(c).  Defendants Jones and Wiley responded to the order on September 15, 2009, arguing that the claims against them should be dismissed because they are immune as state agents under state law. (Doc. 51).  There was no response from either plaintiff or defendant PHS.  On December 14, 2009, a magistrate judge notified the parties that the response filed by defendants Jones and Wiley would be treated as a motion for summary judgment in that it was supported by evidentiary materials outside the pleadings in this case.  Although the plaintiff was given 20 days in which to respond to the motion, no response from him has been forthcoming.  The court now finds that the defendants' motion is due to be granted and the final state-law claims

against them dismissed with prejudice. Further, the court finds that it should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) with respect to the state-law claims against PHS, and those claims will be dismissed without prejudice.

### Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form

necessary for admission at trial; however, she may not merely rest on her pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S.

at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## Summary Judgment Facts

Applying these standards, the court previously set out the undisputed facts, viewed favorably to the plaintiff, in the magistrate judge's report and recommendation, dated July 13, 2009 (Doc. 48), which the court subsequently adopted. The court again adopts this statement of facts for purposes of analyzing the instant motion. Additional evidence was offered by defendants in further support of the instant motion. That additional evidence establishes that on June 16, 2005, Correctional Officer Wiley was disciplined in the form of a warning for her conduct on June 9, 2005, during which she assisted PHS nurses in taking the blood pressure readings of several inmates in the infirmary, including plaintiff.

## Discussion of State-Law Claims Against Jones and Wiley

In his amended complaint, dated March 20, 2006, plaintiff sets out four claims for relief under Alabama law. Count One alleges that defendant Kenneth Jones willfully and wantonly breached his duty to supervise his subordinates, Ralph Price and Aulii Wiley. Counts Two and Three allege, respectively, that the Alabama Department of Corrections and the William E.

Donaldson Correctional Facility willfully and wantonly failed to train the correctional officers properly and willfully and wantonly retained them in employment. Finally, Count Five alleges assault and battery in that the "Defendants" touched the person of the plaintiff in an angry or hostile manner. Under the undisputed facts in this case, each of these claims suffers a fatal flaw, requiring the grant of summary judgment in favor of both the remaining defendants, Warden Jones and Officer Wiley.

At the outset, defendants argue that they are entitled to state-agent immunity, also known as discretionary function immunity, under Alabama law. While it is true that negligent and even wanton conduct by a state agent may remain immune from liability, willful conduct is not immune. In Ex parte Randall, 971 So. 2d 652 (Ala. 2007), the Alabama Supreme Court reiterated its earlier holdings on immunity, saying:

> This Court has previously held that poor judgment or wanton misconduct, an aggravated form of negligence, does not rise to the level of willfulness and maliciousness necessary to put the State agent beyond the immunity recognized in Cranman. See Giambrone, 874 So. 2d at 1057 (holding that State-agent immunity "is not abrogated for negligent and wanton behavior; instead, immunity is withheld only upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority").

Id. at 674 (citing and quoting Giambrone v. Douglas, 874 So. 2d 1046 (Ala. 2003)). Thus, state-agent immunity would shield the defendants in this case only to the extent that plaintiff were to allege and prove negligent or wanton conduct by them. Here, he has alleged more. As to each of Counts One, Two, and Three, plaintiff has alleged willful conduct, as well as wanton conduct. Also,

5

the assault and battery claim in Count Five necessarily alleges an intentional or willful tort. State-agent immunity, therefore, does not dispose of these claims.

Nevertheless, the defendants' motion for summary judgment is due to be granted. First, Counts Two and Three allege no cause of action against either of these remaining defendants. Instead, these counts expressly allege that the "Alabama Department of Corrections" and "the William E. Donaldson Correctional Facility" willfully and wantonly failed to train and willfully and wantonly retained unnamed corrections officers. Aside from the fact that these two state agencies clearly are entitled to sovereign immunity, these counts fail even to plead any claim against defendants Jones and Wiley.

Second, even if Counts One, Two, and Three could be read as stating claims against Jones and Wiley, the undisputed evidence fails to support them. As she points out, defendant Wiley, as a line corrections officer, clearly had no duty to train or supervise anyone, much less anyone alleged in this case to have harmed the plaintiff, and, thus, she cannot be liable for any negligent, willful, or wanton failure to train or supervise. Also, there simply is no evidence that any failure by Jones to properly supervise Wiley, as his subordinate, proximately caused any harm to plaintiff. At worst, all that Wiley is alleged to have done was to assist PHS nurses in taking plaintiff's blood pressure, and this simply did not result in any legal harm to plaintiff. Even so, when this conduct by Wiley was discovered, Warden Jones disciplined her with a warning. Plainly this refutes any accusation of willful or wanton failure to supervise on Jones's part. Furthermore, neither Wiley nor Jones was the employer of any person identified by plaintiff as causing him harm. While Jones, as warden at the William E. Donaldson Correctional Facility, was a supervisor with some supervisory responsibilities, he was not the employer with power to hire and fire. Thus, any willful or wanton

failure to supervise or train, or willful and wanton "retention" of someone does not subject either Wiley or Jones to state-law liability in this case.

Finally, as to Count Five, alleging assault and battery, there is no evidence that Warden Jones ever touched or threatened to touch the plaintiff. There simply is no evidentiary basis for asserting such a claim against Jones. Further, the only touching by Wiley revealed by the evidence is her taking of the plaintiff's blood pressure while assisting the infirmary nurses. Under Alabama law, this does not constitute a hostile or offensive touching or threatened touching. The elements of the intentional tort of assault and battery in Alabama have been described this way:

> "Assault" has been defined as "an *intentional*, unlawful, offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented." Western Union Telegraph Co. v. Hill, 25 Ala. App. 540, 542, 150 So. 709, 710 (1933) (emphasis added). See also Wright v. Wright, 654 So. 2d 542, 544 (Ala.1995). In a civil case, the elements of battery are: (1) that the defendant touched the plaintiff; (2) that the defendant *intended* to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner. Ex parte Atmore Community Hospital, 719 So.2d 1190 (Ala.1998) (emphasis added). Our Supreme Court has explained that "'[a] battery consists in an injury actually *done to the person of another in an angry or revengeful* or rude or insolent manner, as by spitting in the face, or in any way touching him in anger, or violently jostling him out of the way, or in doing any *intentional violence* to the person of another.'" Surrency v. Harbison, 489 So. 2d 1097, 1104 (Ala.1986) (quoting Singer Machine Co. v. Methvin, 184 Ala. 554, 561, 63 So. 997, 1000 (1913) (emphasis added)).

Wood v. Cowart Enterprises, Inc., 809 So. 2d 835, 837 (Ala. Civ. App. 2001) (emphasis all in original). Certainly, Wiley's taking of the plaintiff's blood pressure while he was in the infirmary seeking treatment is not the type of angry, harmful, or vengeful touching necessary to be an assault or battery. There simply is no evidence of any other supposed harmful touching or threatened

touching by either Wiley or Jones.  The undisputed evidence does not establish any assault and battery by these defendants.

### Discussion of State-Law Claims Against PHS

In Counts One, Two, and Three of the amended complaint, plaintiff alleges that defendant Prison Health Service, Inc., ("PHS") breached its duty to supervise and train nurse Amy Benson, and that it negligently hired or retained her as an employee.  In Count Five, he alleges broadly that all defendants, presumably including PHS, committed an assault and battery on him.  Although PHS did not respond to the court's order regarding whether it should or should not exercise supplemental jurisdiction over these claims following the dismissal of all federal claims, the court remains obligated to assess whether the exercise of supplemental jurisdiction under the circumstances of this case is proper.

Supplemental jurisdiction, as codified in 28 U.S.C. § 1367, empowers a federal court to assert jurisdiction over state-law claims that involve the same facts, events, and transactions as are embodied in a matter over which the federal court has original jurisdiction under 28 U.S.C. §§ 1331 or 1332.  Even though the court has the *power* to adjudicate such claims, it has the discretion to decline to do so under the exercise of supplemental jurisdiction when any of the four circumstances delineated in § 1367(c) exist.  See Palmer v. Hospital Authority of Randolph County, 22 F.3d 1559 (11th Cir. 1994); Parker v. Scrap Metal Processors, Inc., 468 F.3d 733 (11th Cir. 2006).  Factors such as comity, federalism, and judicial economy inform the exercise of the district court's discretion.

The circumstance identified at § 1367(c)(3) — the court has dismissed all claims over which it had original jurisdiction — exists in this case.  The only federal claim asserted against defendant

PHS was in Count Four, alleging a violation of the plaintiff's Eighth Amendment right to be free of cruel and unusual punishment arising from the denial or delay of needed medical care. That claim has been dismissed as to all defendants. Against PHS, it was dismissed without prejudice for want of exhaustion of administrative remedies. In an earlier order (Doc. 49, adopting report in Doc. 48), the court found that the plaintiff had not exhausted the administrative remedy provided by PHS, so that under 42 U.S.C. § 1997e(a) this action could not proceed until he exhausted the administrative remedies. Thus, the federal-law claim over which the court had original jurisdiction under § 1331 has been dismissed without prejudice. All that remains now are state-law claims pendent to that federal claim.

      The court having discretion whether to continue exercising supplemental jurisdiction over the state-law claims, it is incumbent on the court to assess whether doing so is proper here. The court finds that it is not, and that discretion should be exercised to dismiss the state-law claims without prejudice. At least as to PHS, there remains the possibility that plaintiff can exhaust his administrative remedies and file a new Eighth Amendment claim. If the court were to proceed with hearing the state-law claims in this action, it is possible that a conflict could arise between the findings of fact in this case and those that might occur in a future one involving the dismissed Eighth Amendment claim. By definition, both of these claims against PHS arise from the same nucleus of operative fact. Judicial economy would dictate that the state-law claims involving the same facts as the potential Eighth Amendment claim be resolved in the same action as that claim. Furthermore, even if plaintiff decides not to pursue exhaustion of his administrative remedies with respect to the Eighth Amendment claim, the remaining state-law claims are best heard and resolved in state court. There is little reason for a federal court to exercise jurisdiction unnecessarily over a claim purely

under state law.  Under the limitation-tolling provision of § 1367(b), plaintiff would still have 30 days after the dismissal of this action to file a new action in state court.  Therefore, the court declines to exercise supplemental jurisdiction over plaintiff's state-law claims against PHS in Counts One, Two, Three, and Five.[1]

Conclusion

Two of the only remaining defendants in this action, Officer Wiley and Warden Jones, filed their motion for summary judgment and, even though the court notified the parties that it would be treated as such, neither plaintiff nor his counsel filed a response or opposition to the motion.  While the absence of a response to the motion for summary judgment is not itself sufficient to warrant granting the motion, the undisputed evidence in this case simply fails to establish a triable issue as to any of the plaintiff's state-law claims.  Defendants' motion is due to be granted, and by separate order, the court will dismiss this action against them with prejudice.

Further, the court has determined to exercise its discretion to dismiss without prejudice the remaining state-law claims against defendant Prison Health Services, Inc., under 28 U.S.C. § 1367(c).  There is no federal claim remaining in the instant action, and the potential for a future action intertwined with the facts of this case necessitates the dismissal of this action without prejudice as to PHS.

**DONE** this the ___15th___ day of January, 2010.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[1] The court notes that Count Six of the amended complaint seeks only injunctive relief, and it is now moot, requiring its dismissal.